NELLIE NELSON KUHN v. THOMAS P. SAUM and MARGARET E. SAUM, Appellants.—291 S. W. 104.

Division One, February 16, 1927.

**1. CONVEYANCES: Restrictions: Omitted from Deed: Effect.** Where the only restrictions contained in the chain of title of defendants' lot fix the building line at ten feet from the street and permit the construction of buildings for business purposes, such restrictions do not impose on their lot the restrictions that only private residences shall be erected on any lot in the four blocks and that no building shall be erected within fifteen feet from the street line, contained in prior deeds from the same grantor conveying to other grantees other lots in the blocks.

**2. ———: ———: Covenants by Grantee Alone.** Covenants for restrictive use made on the part of the grantees alone in the deeds of the common grantor conveying lots in four blocks are prima-facie made solely for the benefit of the grantor's remaining lots, and if he makes such use of the remaining lots as does not conform to such restrictions his prior grantees have no ground of complaint; and if such grantees cannot compel the grantor to observe the restrictions contained in their deeds, they cannot compel his subsequent grantee to do so.

**3. ———: ———: Covenant for Mutual Benefit of All Grantees.** The covenants in deeds for the restrictive use of lots made by the grantees alone being prima-facie imposed for the sole benefit of the common grantor's remaining lots, a further provision in the deeds that the restrictions are made "for the mutual benefit of all parties purchasing lots by similar conveyances from this grantor" is not a covenant by the grantor to make similar conveyances of the remaining lots, and if he does not make similar conveyances of them the restrictions contained in the former deeds cannot by the grantees named in them be imposed on the lots conveyed by the later deeds.

**4. ———: ———: ———: Negative Easement: Applicability.** Admitting that building restrictions for residential uses are in the nature of reciprocal negative easements, and may be created upon a division of an entire tract and conveyances in severalty to different grantees, are imposed upon all the lots, if made in pursuance to a general plan maintained from its inception and understood, accepted, relied on and acted upon by all, although some of the deeds do not contain the restrictions, still the rule has no application where (a) the language employed in the form deeds expressly limits the benefit of the restrictions to parties "purchasing lots by similar conveyances," for in such case the general plan does not embrace lots conveyed by dissimilar deeds, or (b) where if there was a general plan embracing lots conveyed by dissimilar deeds the grantees are not shown to

have had any notice of it, no deed in their chain of title imposing the restrictions.

---

Corpus Juris-Cyc. References: **Deeds,** 18 C. J., Section 459, p. 395, n. 29 New; Section 460, p. 396, n. 38; Section 462, p. 397, n. 55, 59 New.

Appeal from Circuit Court of City of St. Louis.—*Hon. Frank Landwehr,* Judge.

REVERSED.

*Frank X Hiemenz* and *Wilfley, Williams, McIntyre & Nelson* for appellants.

(1) Covenants carrying restrictions against the use of real estate must be expressly defined. Zinn v. Sidler, 268 Mo. 680; Bolin v. Tyrol Inv. Co., 273 Mo. 257. (2) Restrictive covenants are to be strictly construed against the persons seeking to enforce them, and all doubts must be resolved in favor of natural rights and a free use of property and against restrictions. 18 C. J. 387. (3) The case of King v. Union Trust Co., 226 Mo. 351, being the case mainly relied upon by respondent upon the trial, is not in point upon the facts involved in the case at bar.

*Rassieur, Kammerer & Rassieur* for respondent.

. (1) Where lots are sold in accordance with a general scheme or general plan of development or improvement, the grantees may enforce restrictions upon the ground that mutual negative equitable easements are created. Landsberg v. Rosenwasser, 108 N. Y. Supp. 929; Schmidt v. Palisade Sup. Co., 84 N. J. App. 807; Yeomans v. Herrick, 178 Mo. App. 274; Fett v. Foerstel, 159 Mo. App. 75. (2) If enough appears in the deed to show the grantor's general intent that the deed should contain restrictions in favor of different lots against uses of the premises, it is immaterial that such restrictions are differently expressed in different deeds. 18 C. J. 384, sec. 448; Velie v. Richardson, 126 Minn. 334; Bacon v. Sandberg, 179 Mass. 396. (3) A general scheme may exist although a part of the lots may be sold without restrictions, or although the restrictions may not be exactly the same in all of the deeds. Litchfield v. Boogher, 238 Mo. 472; Velie v. Richardson, 126 Minn. 334; Parker v. Nightingale, 6 Allen (Mass.) 341; 18 C. J. 395. (4) Actual notice is not necessary. The words "subject to restrictions of record" in appellants' deed was sufficient to put them on inquiry, and placed upon them the duty. to

examine the record for restrictions imposed by the deed in respondent's chain of title through a common grantor. Appellants took title with constructive notice of restrictions. Sec. 2199, R. S. 1919; Howland v. Andrus, 80 N. J. Eq. 276; King v. Union Trust Co., 226 Mo. 351. (5) The uniform building line of the buildings already constructed was sufficient to place upon the appellants the duty to examine the records for restrictions. Tallmadge v. East River Bank, 26 N. Y. 105. (6) Where the owner of land has adopted a general scheme and contracts with the purchasers of successive parcels with respect to the manner of the occupation and improvement of such parcels, he thereby affects the remainder of the land with an equity which requires it also to be occupied and improved in conformity to the general plan, and this equity is binding upon the subsequent purchasers of the remaining parcels. King v. Union Tr. Co., 226 Mo. 351; Compton-Hill Imp. Co. v. Tower's Executors, 158 Mo. 282; Holt v. Fleischman, 78 N. Y. Supp. 647; Bimson v. Bultman, 38 N. Y. Supp. 209; Turner v. Howard, 42 N. Y. Supp. 335; Whitney v. Union Ry. Co., 77 Mass. (11 Gray) 359; San Domingo Min. Co. v. Min. Co., 10 Cal. App. 415; Kirkpatrick v. Peschine, 24 N. J. Eq. 206.

RAGLAND, J.—This case comes to the writer for opinion on reassignment. It is a suit in equity to enjoin the violation of alleged building restrictions. There is but little controversy as to the material facts. Plaintiff was the owner in fee of lot 27, in city block 4949, in the city of St. Louis; her title was acquired through a deed from the St. Louis Improvement Company, a corporation, dated August 27, 1894. That deed recited that the conveyance thereby made was subject to certain "reservations, restrictions and conditions," which were specifically set out. The "restrictions" took the form of covenants on the part of the grantee for himself and every person claiming under him. So far as pertinent here they were: that he would not erect upon said premises any building designed or intended to be used for any purpose or purposes except as a private residence; and that the front of any building erected should be not less than fifteen feet distant from the line of the street on which the lot fronts. The recital of the reservations, restrictions and conditions concluded as follows:

"In consideration that the foregoing conditions and covenants are made for the mutual benefit of all parties purchasing lots by similar conveyances from this grantor, it is expressly agreed, and this conveyance is upon the express condition, that it shall be lawful for any such person or persons owning any lots or part or parts of lots in Tyler Place Addition, by purchase from this grantor, or any or either of them, to prosecute any proceeding or proceedings at law, or in equity against any person or persons infringing or attempting to infringe, or omitting to perform or to keep or observe or abide

by said provision or provisions, for the purpose of preventing them from so doing, or collecting damages for such infringement or omission, or both.''

The territory which is subject to the restrictions just mentioned comprises, according to the plaintiff's contention, all of the lots in city blocks 4948, 4949, 4950 and 4951, which front on Castleman Avenue. That street runs east and west, blocks 4949 and 4950 lie on the north side, and blocks 4948 and 4951 on the south side. Defendants own lot 14 in city block 4948 and are intending to erect thereon a two-story building the front of which will be on a line ten feet from the line of the street (Castleman Avenue) on which the lot fronts. And it is designed to be used for stores on the first floor, and offices or living quarters on the second. Defendants say that their said lot is not subject to the restrictions enumerated in the deed to plaintiff.

In the year 1890 the St. Louis Improvement Company owned all of the lots first mentioned, excepting only lot 23 in block 4951. Each of the lots had a frontage of fifty feet, on Castleman Avenue, and all were of a uniform depth. In the deed first used by the company in conveying the lots the reservations, restrictions and conditions heretofore referred to were printed. A majority of the lots, perhaps, were conveyed by such deeds. After a while the use of the form deed was discontinued, and in the deeds thereafter made the substance of the restrictions as to the building line and use of the premises was written in, or else the restrictions contained in one of the recorded printed deeds were incorporated by reference. All of the deeds made by the St. Louis Improvement Company in the conveyance of the lots, except one presently to be noted, contained the restrictions as to use and building line in some form. On January 4, 1922, the Company still owned five of the lots. On that date it conveyed these lots: 14 in block 4948 and 15, 19, 21 and 22 in block 4949, to Louise R. Conrades. In the deed effecting that conveyance the only mention of restrictions was this: ''Subject to restrictions of record.'' Mrs. Conrades conveyed the five lots to the Wagner Construction Company by deed, dated February 21, 1922, which contained no reference to restrictions. On August 7, 1922, the Wagner Construction Company by deed of that date conveyed said lots 14 and 15 to defendants, ''subject to conditions and restrictions now of record on said property.''

In order to determine ''the restrictions of record'' as to the five lots last mentioned, it is necessary to retrace the history of the title prior to its acquisition by the St. Louis Improvement Company. The latter acquired by mesne conveyance the title to all of the lots fronting on Castleman Avenue in the four city blocks, except lot 23 in block 4951, from the Western Investment & Improvement Com-

pany. All of the deeds by which the latter company conveyed the lots contained a covenant on the part of the grantee as follows;

"No soap-boiling establishment, chemical works, slaughterhouse, gas factory, dramshop or any nuisance to be placed upon, erected, maintained, carried on or permitted on any lot or subdivision or part thereof, and upon further condition that neither grantee, his, her or their heirs or assigns, or legal representatives, shall ever erect or build any house on said premises less than two stories in height and of . . . brick or of stone material or at a less distance than ten feet from the . . . line of Castleman Avenue."

When defendants were negotiating the purchase of their lots they caused the title to be examined by the Title Guaranty Trust Company of the city of St. Louis. The certificate furnished them by that company recited: "Conditions and restrictions according to deed recorded in book 952 page 480." The deed referred to was one containing the restrictions last set out.

In the trial of the cause in the circuit court plaintiff introduced oral evidence tending to show that thirty of the lots were sold by the St. Louis Improvement Company at auction, May 28, 1910; the sale was previously advertised by hand-bills which proclaimed: "Charming Home Sites Restricted for a Life-long Home;" and that at such sale it was announced that the lots would be sold subject to the following restrictions:

"No nuisance; no flats or business buildings; only one private residence, of brick or stone, on each 50-foot lot, to cost not less than $5,000 including outhouses; all residences must conform strictly to the building line as established by the buildings now erected on Castleman Avenue in each block, that line having been specified in former deeds as being 15 feet back of the front line of the lot or 27 feet back of the curb and street line."

It was further shown that the improvements on all of the lots, other than the one contemplated by defendants, conformed to the restrictions set forth in plaintiff's deed.

The trial court found the issues for plaintiff and entered a decree perpetually enjoining the defendants from erecting on their lots or either of them, "any buildings designed or intended for business purposes, or any building encroaching within fifteen feet of the street line." From that decree defendants prosecute this appeal.

The restrictions set out in the deed from the St. Louis Improvement Company to respondent (the ones said to be violated by appellants) are in substance that no building designed for any purpose other than a private residence shall be erected on the lot, and the front of any building erected thereon shall be at least fifteen feet distant from the street line. Whether appellants' lot is subject to those restrictions may be determined by a process of elimina-

tion.   Pursuant to that method we look first to the deed from the St. Louis Improvement Company to appellants' grantor.   We find that that deed merely recites that the property is conveyed "subject to restrictions of record."   Now there was of record at that time a deed in the chain of title to said lot 14, and only one, which imposed restrictions, and that was the deed from the Western Investment & Improvement Company to the St. Louis Improvement Company's grantor.   Those restrictions (the portion of the deed embodying them has heretofore been quoted) fixed the building line at ten feet from the street and permitted the construction of buildings for business purposes.   It conclusively appears therefore that neither the deed to appellants nor any other in their chain of title imposes upon their lot the restrictions contended for by respondent.

The next inquiry is whether the deed from the St. Louis Improvement Company to respondent imposed a negative easement in favor of the grantee on the remaining lands of the grantor, which included the lot subsequently purchased by appellants.   In this connection it will be noted that all the covenants in that deed which may be termed restrictive were made on the part of the grantee.   The grantor made none.   That fact standing alone shows prima-facie that the restrictions were imposed solely for the benefit of the grantor's remaining land.   Consequently, if the grantor made use of his remaining land which did not conform to such restrictions, his grantee had no ground of complaint.   And if the grantee could not compel his grantor to observe the restrictions, he could not compel a subsequent grantee to do so. [Beattie v. Howell (N. J. Eq.), 129 Atl. 822.] However, the deed from the St. Louis Improvement Company to respondent expressly provided that the restrictions were made "for the mutual benefit of all parties purchasing lots by *similar conveyances* from this grantor."   But the grantor on its part did not covenant to make similar conveyances of the other lots, or any of them, and he did not make a similar conveyance to appellants' grantor.   From what has been said it is apparent that the deed from the St. Louis Improvement Company to respondent did not, either expressly or by legal implication, impose restrictions upon the lot subsequently purchased by appellants.

Whether appellants' lot was subject to a negative easement by reason of having been sold pursuant to a general plan or scheme of improvement remains to be considered.   The broadest statement of the rule which we have been able to find in the reported cases appears in Allen v. Detroit, 133 N. W. 317.   It follows:

"The law is well settled that building restrictions of the character shown are in the nature of reciprocal negative easements, and may be created upon a division, and conveyance in severalty to different grantees, of an entire tract.   That a portion of the conveyances does

not contain the restrictions will not defeat the same. Although some of the lots may have written restrictions imposed upon them and others not, if the general plan has been maintained from its inception, if it has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se*. It goes with the land, and is equally binding on all purchasers with notice.''

In considering the applicability of the rule just stated to the facts here the first inquiry is: Was appellants' lot sold and conveyed pursuant to a general scheme of development and improvement? The very fact that it was conveyed by deed not containing the restrictions embodied in the deeds to the other lands, according to many authorities, is of itself sufficient to take it out of the general scheme, if there was one. [Beattie v. Howell, supra; Bacon v. Sandberg, 179 Mass. 396, 398.] There is a stronger reason, however, for holding that appellants' lot was not sold in connection with a general scheme or plan, and that appears from the language employed in the form deeds executed by the St. Louis Improvement Company, including the one to respondent, which limits the benefits of the restrictions to parties ''purchasing lots by similar conveyances.'' This language by necessary implication excludes the lot of appellants from the benefits, and consequently the burdens, of a general scheme, if one existed.

It should be added further that, if appellants' lot was included within a general plan of improvement and development, involving the restrictions contended for, appellants were not shown to have had any notice of it. There was no deed in their chain of title by which any of their grantors, immediate or remote, had undertaken to burden the lot with any such restrictions, or covenanted to do so. Consequently there was nothing of record to impart constructive notice within the purview of King v. Trust Co., 226 Mo. 351, cited by respondent. And the record is absolutely barren of anything tending to show actual notice.

As it appears that appellants' lot is not, under any legal theory, burdened with the restrictions which respondent seeks to impose upon it, the judgment of the circuit court must be reversed. It is so ordered. All concur, except *Gantt, J.*, not sitting.