COOK *v.* BANDEEN.

BROWNSON *v.* SAME.

1. MUNICIPAL CORPORATIONS—ZONING—RESIDENCE—TRAILERS.

Conclusion of circuit judge that residential classification of city zoning ordinance did not permit use of a trailer as a residential building is affirmed, under record presented.

2. SAME—ZONING—TRAILER CAMP.

A city zoning ordinance which did not prohibit trailer camps altogether, although it did bar them in territory zoned for residential uses, would not violate the trailer camp licensing act (CL 1948 and CLS 1956, § 125.751 *et seq.*).

3. APPEAL AND ERROR—QUESTION REVIEWABLE—CROSS APPEAL—TRAILER CAMP—NONCONFORMING USE.

The question for review on defendants' appeal from decree enjoining them from using property beyond 264 feet from highway for expansion of trailer camp site does not embrace their nonconforming use of property between 150′ commercial zone and such 264′ line for such purpose, where the use in such 114′ strip zoned for residential use was established before adoption of the zoning ordinance and no cross appeal was taken by plaintiff neighbors.

4. MUNICIPAL CORPORATIONS—ZONING—CLASSIFICATION—COURTS.

The application of zoning classifications is generally regarded as a legislative function to be exercised by the legislative body of the city concerned, as courts do not sit to function as a super zoning board.

5. SAME—ZONING—RESIDENCE—TRAILER CAMP—VALUE OF PROPERTY.

City zoning ordinance which prohibited a trailer camp in an area surrounded on 3 sides by areas zoned and developed for residences may not be held unconstitutional even though such property may be worth more to the owners as trailer camp property than as residential property and in which non-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 58 Am Jur, Zoning § 63.
[4] 58 Am Jur, Zoning § 231.
[8] 17A Am Jur, Easements § 13.

conforming use does not appear to have been attempted until shortly before suit to enjoin it was commenced.

6. INJUNCTION—LACHES—EXPANSION OF TRAILER CAMP INTO RESIDENTIAL ZONE.

Plaintiff neighbors in residentially zoned area were not guilty of laches as to commencement of suit against defendants who sought to enjoin expansion of defendants' trailer camp into residentially zoned area where issuance of building permit for construction of a trailer camp office and location of 15 more trailer sites apparently precipitated protests by plaintiffs and commencement of suit to enjoin such expansion.

7. MUNICIPAL CORPORATIONS—BUILDING PERMIT—CONSTRUCTION OF ZONING ORDINANCE—RECIPROCAL NEGATIVE EASEMENTS.

Issuance of a building permit for utility building for trailer camp did not constitute an interpretation of zoning ordinance and, even if it did, such erroneous interpretation would not be binding upon neighbors in their suits to enjoin violation of such ordinance and reciprocal negative easements.

8. COVENANTS—RECIPROCAL NEGATIVE EASEMENTS—ELEMENTS.

The essential elements for proof of reciprocal negative easements are a common grantor, a general plan and restrictive covenants running with the land in accordance with the plan and within the plan area in deeds granted by the common grantor.

9. SAME—GENERAL PLAN—FINDINGS OF TRIAL COURT—RECORD.

Finding of trial judge in suit by grantees of deeds to lots in unrecorded plat to enjoin expansion of trailer camp that there was a general plan for residential restriction imposed by defendant grantors held, supported by record.

10. SAME—GENERAL PLAN—FRAUD—REPURCHASE OF UNRESTRICTED LOT.

Defendant grantors of lots in an unrecorded plat who first conveyed an unrestricted lot, then sold other lots to plaintiffs subject to reciprocal negative easements limiting use thereof to residential purposes and later repurchased the unrestricted lot, were estopped from thereafter using it for commercial purposes, where intervening purchasers had built homes on their lots in reliance thereon, since to permit such commercial use, under the circumstances, would constitute fraud, actual or constructive.

Appeal from Isabella; Holbrook (Donald E.), J. Submitted October 15, 1958. (Docket Nos. 61, 62, Calendar Nos. 47,734, 47,735.) Decided June 5, 1959.

Bill by Theodore A. Cook, Bernadine M. Cook and 6 other property owners against Kenneth C. Bandeen and Beatrice I. Bandeen to restrain use of property and expansion of trailer camp in violation of zoning ordinance.

Bill by Howard C. Brownson, Marja Brownson and 5 other property owners against same defendants for similar relief because of violation of reciprocal negative easements arising from deeds.

Decree for plaintiffs in both cases granting substantial relief in respect to zoning violation and full relief in respect to violation of deed restrictions. Cases consolidated on appeal of defendants. Affirmed.

*Byron P. Gallagher,* for plaintiffs.

*Dale D. Libby* (*J. Allen Lampman,* of counsel), for defendants.

EDWARDS, J. We deal here with 2 cases consolidated on appeal wherein residents in the immediate vicinity of a trailer camp sought injunctive relief from an expansion of said trailer camp. In Cook *v.* Bandeen, various neighbors sought to restrain the expansion on grounds of violation of the zoning ordinance of the city of Mt. Pleasant. In Brownson *v.* Bandeen, homeowners who had purchased their lots from the Bandeens sought injunctive relief from the expansion on their claim that defendants were thereby violating existing reciprocal negative easements. The circuit judge who heard both matters granted injunctive relief in both proceedings.

Defendants Kenneth and Beatrice Bandeen purchased an unsubdivided tract of land lying north and east of the intersection of US-27 and High street

in 1927. The original tract extended 20 rods north and 48 rods east of said intersection.

Prior to the Bandeen purchase, the city of Mt. Pleasant had adopted a zoning ordinance, # 208, effective September 30, 1926. This ordinance placed all of defendants' property, except that immediately adjacent to US–27, in a residential classification whose enumerated uses did not include trailer camps. Subsequently—and prior to the expansion here complained of—said ordinance was amended by ordinance # 290, effective August 28, 1947, which increased the business zoning of defendants' property to a depth of 150 feet paralleling US–27. The business classification of this ordinance allowed the construction of trailer camps.

Starting in 1929, and continuing down to 1955, defendant's Bandeen moved to the property in question and began to develop its western portion along US–27. A store building was built on the corner in 1940 and 8 or 9 cabins were constructed. Prior to 1955 some of the cabins had been removed and trailer sites prepared, and trailers were placed thereon. The area thus employed appears to have extended to a depth of approximately 264 feet from US–27, as shown on plaintiff's exhibit 1; or to the western boundary of Anna street if extended south through defendants' property to High street.

In March of 1955 defendant Kenneth Bandeen prepared a plan for expansion of the trailer park farther to the east. This plan involved the construction of a trailer camp utility building within the area west of the west line of Anna street extended (approximately 264 feet from US–27). But it also involved the use of an L-shaped parcel extending at its greatest depth from US–27 an additional 183 feet farther to the east, beyond the west line of Anna street extended. It was the proposed location on this property of 15 additional trailers, plus the

construction of a trailer camp office thereon, which apparently precipitated this litigation.

The construction of the utility building was started in May of 1955 (after receipt of a building permit on May 23, 1955), and completed June 14, 1955. Subsequently, in July, preparation of the additional trailer sites was begun, and protests from neighbors and the city of Mt. Pleasant followed promptly.

The circuit judge filed a lengthy and careful opinion analyzing the provisions of the zoning ordinances. Contrary to the positions urged by defendants before us, he held that the residential classification of the zoning ordinance did not permit a trailer as a residential "building" (see *Michaels* v. *Township Committee of Pemberton Township, Burlington County*, 3 NJ Super 523 [67 A2d 324]); and that the ordinance, since it did not purport to prohibit trailer camps altogether, did not violate the trailer camp licensing act (CL 1948 and CLS 1956, § 125.751 *et seq.* [Stat Ann 1955 Cum Supp § 5.278(1) *et seq.*]). (See *City of Howell* v. *Kaal*, 341 Mich 585.)

As to all of these well-reasoned conclusions, we agree.

The circuit judge also passed on the reasonableness in a constitutional sense of the zoning ordinance as it applied to defendants' property. He held that due to existing business uses along US–27 and across High street it was unreasonable for the city to zone for residential use only that portion of defendants' property lying west of the west line of Anna street extended. Beyond that line to the east, he held the residential zoning classification reasonable, and enjoined the use of the disputed 183 feet for trailer camp purposes.

No cross appeal was taken by appellees. Hence we must determine only whether or not the residential classification of the zoning ordinance was reasonable in a constitutional sense as it applies to the

183 feet of defendants' property lying east of the extended west line of Anna street.

The circuit judge pointed out in his opinion that this area was surrounded on 3 sides by areas zoned and developed for residences. He said further:

"There must be a cutting-off line, and even though the property may be worth more to the defendants as trailer park property rather than residential, they must forfeit such benefit to themselves individually, for the advantage and welfare of the people living in the area who are entitled to residential classification of their property."

Generally, we regard the application of zoning classifications as a legislative function to be exercised by the legislative body of the city concerned. The courts do not sit to function as a super zoning board. *Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425.

Nothing is presented in this record which would justify our holding the zoning ordinance unconstitutional in prohibiting a trailer camp in the disputed area of defendants' property east of the west line of Anna street extended. *Roberts* v. *City of Three Rivers,* 352 Mich 463.

Nor do we feel that there is merit to appellants' argument as to laches, or nonconforming use, as to the disputed area. Plaintiffs protested promptly when defendants' intentions as to this area became clear, and defendants proceeded to violate the ordinance at their peril. No facts point to nonconforming use of this area prior to the zoning ordinances in question. Nor do we think that the issuance of the building permit for the utility building constituted an interpretation of the zoning ordinance as claimed by appellants. Nor, if it did, would we believe such an erroneous interpretation binding. *Fass* v. *City of Highland Park,* 326 Mich 19.

As to Cook *v.* Bandeen, we affirm. Costs to appellees.

We likewise agree with the chancellor's view of the reciprocal negative easement problem presented by Brownson *v.* Bandeen.

Without detailed statement of the various transactions, it may be pointed out that the Bandeens sold various parcels of their original tract to plaintiffs who subsequently built homes thereon. Several of these deeds carried a restriction as follows:

"It is understood and agreed between the first and second parties hereto that the property above described is to be used for dwelling purposes only and any dwelling house erected thereon is to cost not less than $5,000."

The deeds also made use of a description based on a certain plat of Bandeen's subdivision which defendant Kenneth Bandeen had had prepared, but which was never subsequently recorded. One lot owned at the time of this proceeding by the defendants and intended for use in the trailer park expansion had, however, been deeded without restriction to William T. Bandeen, a brother of Kenneth Bandeen, prior to the grant of the restricted deeds, and subsequent to the granting of the restricted deeds had been reconveyed to defendants.

The chancellor found defendants bound by reciprocal negative easements as to the 2 blocks described in the unrecorded plat lying east of Anna street. He said:

"In determining the second case which is the reciprocal negative easement case, the court realizes that restrictions are placed in deeds for a purpose. There is no question but what the defendants when they inserted the restrictions in the deeds covering the 3 lots in block 2 of the unrecorded plat of Bandeen's subdivision they desired some benefit to re-

sult. Now, there was no need for them to insert the restriction for the benefit of the grantee unless someone else building in the same block would likewise be restricted, for it is easy to follow the grantee could protect himself as to his own lot, or lots, by building thereon a proper home or house. We then must come to the conclusion that it is put in the deeds for the purpose of protecting the balance of the property owned by the defendants so that the property will be developed in a manner to the liking and wishes of the defendants. There is no question but what the restrictions were an inducement to those purchasing lots. They all followed the pattern and requirements with the exception of William T. Bandeen and his wife, who built a duplex on one of the lots. This violation evidently wasn't deemed serious by the other owners in the area because no suit followed. However, this would not preclude the other owners of lots in the area from enforcing the reciprocal negative easement, as is evidenced in the case of *Schadt* v. *Brill,* 173 Mich 647 (45 LRA NS 726). This case is also authority for the law that: 'The record of a deed from persons platting a subdivision containing restrictions as to the size and kind of buildings to be erected on the lots, is notice to a subsequent purchaser through an instrument of conveyance having no restrictions.' The only method that we can ascertain the intent of the parties is to go to the unrecorded plat because the restrictions are contained in all deeds where the descriptions are referred to as being in the unrecorded plat. The court realizes that block 3 would not be affected because there was business property there, but block 2 it would appear to necessarily follow that restrictions as to part of the lots would extend to all of the lots retained and owned by the defendants, otherwise there would be no purpose in making the restrictions in the first place. It would not be fair for the defendants to insert the restrictions as to part of the lots in the block and then later be allowed to change his mind and utilize the remaining

lots they have retained for business purposes, contrary to the spirit and letter of the original covenants contained in the deeds. It has been ruled in *Putnam* v. *Ernst,* 232 Mich 682, 687, that 'Building restriction cases present such wide difference in facts, that, in equity, but few rules can be applied generally, and in the main each case must be determined on its own facts.' In this case the peculiar facts are that there were only restrictions in deeds where reference was made to blocks 1 and 2 of the unrecorded plat. It would necessarily follow from a reasonable conclusion that the reciprocal negative easement would apply to those 2 blocks.     *     *     * Now, the defendants further maintain that lot No 4 of block No 2 of the unrecorded plat is not a part of the reciprocal negative easement because a reciprocal negative agreement is never retroactive. Defendants state lot 4 had been deeded previous to any restrictions being placed in any of the deeds. There is no question but what this is true, that they had deeded lot 4 to William T. Bandeen and that at that time there were no restrictions in any transfers from the defendants. Subsequently, a number of years later, plaintiffs William T. Bandeen and wife, resold the property back to defendants, and in both deeds the property was described by metes and bounds and was not referred to as property in the unrecorded plat. The leading case in Michigan concerning reciprocal negative easements is *Sanborn* v. *McLean,* 233 Mich 227 (60 ALR 1212). This case is authority for defendants' position in this regard. If there was nothing else in the matter the court would have to agree with the defendants that it was not applicable to lot 4, however this being a court of equity it would not be proper to allow defendants to use lot 4 to their benefit when the remaining property in block 2 of theirs is subject to a reciprocal negative easement to the benefit of defendants and to the benefit of plaintiffs, both. The court feels that defendants are estopped to use lot 4 of block 2 of the

unrecorded plat for it would be inequitable to do otherwise."

The essential elements for proof of reciprocal negative easements are (1) a common grantor; (2) a general plan; and (3) restrictive covenants running with the land in accordance with the plan and within the plan area in deeds granted by the common grantor. *Allen* v. *City of Detroit,* 167 Mich 464 (36 LRA NS 890); 17A Am Jur, Easements, §§ 6, 28. We have reviewed the unrecorded plat of Bandeen's subdivision with some interest with the comments and findings of the chancellor in mind. We believe it is entirely reasonable for him to have taken the view that as to at least the 2 blocks shown thereon (blocks 1 and 2) lying east of Anna street, there was a general plan for residential restriction.

We likewise believe, as did the chancellor, that for defendants to formulate such a plan, sell restricted lots in pursuance thereof, watch homes be built by their grantees in reliance thereon, and then purchase back an unrestricted lot in 1 of the same blocks and propose to use same for a commercial use, would constitute fraud, actual or constructive. Defendants obviously had knowledge of all the facts in the matter. There is no showing that plaintiffs did. The chancellor was right in holding, on these facts, that defendants were estopped to deny that lot 4, block 2, was likewise subject to a reciprocal negative easement. 19 Am Jur, Estoppel, §§ 33, 34.

In Brownson *v.* Bandeen, we likewise affirm the chancellor's decree. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.