**Mr. and Mrs. Richard A. WEBER,
Plaintiffs-Appellants,**

v.

**LES PETITE ACADEMIES, INC., and National Homes Construction Corporation,
Defendants-Respondents.**

No. 34602.

Missouri Court of Appeals,
St. Louis District, Division 1.

Jan. 9, 1973.

Donald S. Hilleary, Clayton, for plaintiffs-appellants.

Ziercher, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, Schoenbeck & LaTourette, St. Louis, for defendants-respondents.

McMILLIAN, Judge.

This is an appeal by plaintiffs from a judgment of the Circuit Court of St. Louis County sustaining defendants' separate motions for summary judgment. The plaintiffs brought suit seeking an injunction to compel defendants to remove a certain structure from a parcel of land owned by defendant, Les Petite Academics, Inc., and to enjoin defendants from using said parcel of land as a day nursery and in the alternative seeking an injunction and damages for the breach of either a negative easement or a reciprocal servitude.

The plaintiffs are the owners of real estate and improvements known as Lot 23 located in Marietta Plat 3, a fully developed residential subdivision near the intersection of New Halls Ferry Road and Highway 140 in St. Louis County. Defendant, Les Petite Academies, Inc., is the onwer of a plat immediately adjacent to Lot 23 designated as Lot A. Defendant Les Petite Academies, Inc., through defendant, National Homes Construction Corporation was, at the time the original suit was filed, erecting a structure on Lot A to be used as a day nursery.

Subsequently plaintiffs filed an amended petition in two counts: Count I sought an injunction ordering the removal of the structure on Lot A and further an injunction prohibiting the defendant from using Lot A as a day nursery in violation of the restrictive covenants on Lot A. Count II alleged that plaintiffs were entitled to damages and an injunction ordering the removal of the structure on Lot A and were further entitled to an injunction prohibiting the defendants from using Lot A as a day nursery since such use was a breach of the negative easement or implied reciprocal servitude plaintiffs had acquired in defendants land, Lot A.

Both defendants filed separate answers to plaintiff's amended petition and re-filed their motions for summary judgment. On January 27, 1972, the court sustained defendants' motions for summary judgment.

On February 10, 1972, the plaintiffs filed a motion for new trial and to amend their petition. Both requests were denied.

■■■ As this court pointed out in Stoffel v. Mayfair-Lennox Hotels, Inc., Mo. App., 387 S.W.2d 188, which cited Cooper v. Finke, Mo., 376 S.W.2d 225, 229, "a summary judgment, as its name indicates, is an extreme and drastic remedy and great care should be exercised in utilizing the procedure. It may be rendered when, but only when, the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of a material fact and that the moving party is entitled to a judgment as a matter of law. Civil Rule 74.04(c), V.A.M.R.; Swink v. Swink, Mo., 367 S. W.2d 575; Brown v. Prudential Insurance Co. of America, Mo.App., 375 S.W.2d 623."

■■■ Plaintiffs contend that the trial court erred in granting defendants' motions for summary judgment since the defendants failed to offer unassailable evidence that there were no genuine issues of fact in dispute as alleged in Counts I and II of plaintiffs' petition. To be sure, the burden of proof rests upon the movants, in this instance upon defendants, to show by "unassailable proof" (Civil Rule 74.04(h), V.A.M.R.) that there are no genuine issues of fact, Nelson v. Browning, Mo., 391 S. W.2d 873, 877(1); Pagan v. City of Kennett, Mo.App., 427 S.W.2d 251. In this instance, defendants properly filed separate

motions for summary judgment pursuant to Civil Rule 74.04 along with supporting affidavits and exhibits.

■ Our duty on appeal is to review the record in the light most favorable to the party against whom the motion was filed and sustained and to determine if a genuine issue of fact does exist. Wood v. James B. Nutter & Co., Mo., 416 S.W.2d 635, 636(1); Campbell v. Stout, Mo.App., 408 S.W.2d 585, 588(3); Gasen's Drug Stores, Inc. v. Jones Enterprises, Inc., Mo. App., 388 S.W.2d 495, 500(4); Pagan v. City of Kennett, Mo.App., 427 S.W.2d 251, 253.

"* * * 'A genuine issue of fact exists for the purpose of avoiding a summary judgment whenever there is the slightest doubt as to the facts.'" Maddock v. Lewis, Mo., 386 S.W.2d 406, 409, cert. den. 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688; Elliott v. Harris, Mo., 423 S.W.2d 831, 835; cited Pagan, supra.

Plaintiffs assert that the record, when favorably considered conclusively shows that there are at least two genuine issues of fact in dispute. First, plaintiffs argue that Count I of their petition presents a genuine issue of material fact as to whether or not Lot A is restricted to residential dwelling homes by reason of the written restrictions on Marietta Plat 3. Plaintiffs rely on the following restrictions which appear on the plat to support their contention that the subdivision is restricted to residential dwelling homes:

"All dwellings to consist of a minimum of 80% masonry exterior facing.

"Any addition to present home must be attached to same—not a separate dwelling.

"Each dwelling must have a minimum living area of 1,150 square feet, plus a two (2) car attached garage.

"Only chain link type fencing may be used. Fencing may be installed only in the *back* yard of each lot, *not* on *sides* or *front* of dwelling."

Plaintiff argues that a close reading of the restrictions, particularly the last paragraph, clearly indicates that the only structures permitted on those lots are residential dwellings.

■ The determinative issue on the plaintiffs' allegation of error as to Count I is whether a question of law or fact is raised by the plaintiffs' contention that the restrictions on the plat prohibit the construction of a day nursery upon Lot A. Clearly, there is no dispute of fact as to the actual wording of the restrictions. Both parties agree that the restrictions stated above appear on the plat. The only dispute that exists is whether or not those restrictions prohibit the construction of a day nursery on Lot A. This dispute does not involve any question of fact. The dispute involves only a construction of the restrictions on the plat as to whether or not a nursery can be built on Lot A.

The dispute was properly resolved by a judicial determination that the pleadings and deposition together with the affidavits filed failed to show a genuine issue as to any material fact and that the prevailing party was entitled to a judgment as a matter of law. Civil Rule 74.04, V.A.M.R.; Cooper v. Finke, supra; Brown v. Prudential Ins. Co. of America, supra; Pallme v. Rott, Mo.App., 440 S.W.2d 184. Therefore, we affirm the trial court's ruling of a summary judgment on Count I of plaintiffs' petition.

Next, plaintiffs allege that the trial court erred in granting defendants' motion for summary judgment for the reason that the defendants failed to show that a genuine issue of material fact did not exist under Count II of plaintiffs' amended petition. Count II alleges that Lot A was part of the subdivision Marietta Plat 3 and was developed by a common grantor under a common plan or scheme and as a result plaintiffs acquired an equitable right in the

form of a reciprocal negative easement or implied reciprocal servitude which prevented the use of Lot A for any purpose other than a single family dwelling.

Plaintiffs' Count II is based on a legal theory advanced by the plaintiff in Campbell v. Stout, Mo.App., 408 S.W. 585.

In the Campbell case plaintiff argued that:

" * * * when a common grantor develops a tract of land for sale pursuant to a general plan or scheme of improvement, and sells a substantial number of lots subject to restrictions of benefit to the land retained, then the grantees acquire an equitable right, variously called a reciprocal negative easement or implied reciprocal servitude, to enforce a similar restriction against the purchaser of the unrestricted lots who has actual or constructive notice of the restrictions [1]

1. Grange v. Korff, 248 Iowa 118, 79 N.W. 2d 743, 747–748 [3] [6]; Rieger v. Wessel, Ky., 319 S.W.2d 855, 857–858 [2–4]; Turner v. Brocato, 206 Md. 336, 111 A.2d 855, 864–865 [16]; Sanborn v. McLean, 233 Mich. 227, 206 N.W. 496, 497 [1–5], 60 A.L.R. 1212, 1214–1215; Minner v. City of Lynchburg, 204 Va. 180, 129 S.E.2d 673, 678–679 [2, 3] [4]; 2 American Law of Property, § 9.33, pp. 430–432 (1952); Annos., 4 A.L.R.2d 1364 (1949); 144 A.L.R. 916 (1943); 60 A.L.R. 1216 (1929).

* * * the intent to make such restrictions mutual and binding may be inferred from the subdivider's sale of his tract pursuant to a uniform plan or scheme [2]

2. Turner v. Brocato, supra, 206 Md. 336, 111 A.2d at 865; Cook v. Bandeen, 356 Mich. 328, 96 N.W.2d 743, 747 [8]; Minner v. City of Lynchburg, supra, 204 Va. 180, 129 S.E.2d at 679; 20 Am.Jur.2d Covenants, Conditions and Restrictions, Sections 173 and 175, pp. 732–735, 736–738.

* * * The principle that unrestricted lots may become subject to such a negative easement or implied reciprocal servitude by reason of having been sold pursuant to a general scheme of improvement has been recognized in this jurisdiction, Kuhn v. Saum, supra, 316 Mo. 805, at 810–811, 291 S.W. 104, at 106, and see Scurlock, Missouri Law of Land Agreements which Run with the Fee, 23 U. Kan.City L.Rev. 3, 47–49. * * *" (at p. 589)

In Campbell, the defendants were Stout, who laid out and platted the subdivision, and Byrd, who purchased the lots from Stout and built residences thereon. In each conveyance from Stout to Byrd, except one, the warranty deeds specifically stated that the lots were to be used for "a private residence." The plat included the grant of an easement to the City of Kennett for utilities "or any other public convenience desirable for a residential district." The only lot that did not carry any restrictions was Lot 6. Lot 6 was larger than the rest of the lots and was adjacent to a developed commercial property outside of the subdivision. Defendant Byrd began construction of a medical building on Lot 6. Plaintiffs, the owners of lots in the subdivision, filed suit to enjoin the construction of the medical building. Defendants filed motions for summary judgment and the trial court sustained said motions.

In reversing the judgment of the trial court, the Springfield Court of Appeals held that,

" * * * Generally it may be said that the question whether restrictions were imposed pursuant to a general scheme or plan of improvement is to be determined by the intention of the parties, as gathered from the words used in the light of all the facts and circumstances, 26 C.J.S. Deeds § 167(2), pp. 1147–1151, and we are inclined to agree with the observation made in Hagan v. Sabal Palms, Inc., Fla.App., 186 So.2d 302, 314–315 [19] [20], in a somewhat similar situation, to the effect that the law concerning these implied restrictions appears complex precisely because the result in each case involves a balancing of the equities, which must be determined from the facts. The scanty record before us

indicates support for the positions of both parties, but no testimony of any kind has been heard, and because in any such case there are many subjective factual considerations involved which could conceivably be decisive one way or the other, we think the final result can only be fairly arrived at after a trial on the merits. * * *" Campbell at 590.

This court is of the opinion that case of Campbell v. Stout, supra, is controlling in this instance. Plaintiffs argue that Lot A is restricted to residential use pursuant to a general scheme or plan. Plaintiffs contend that this general scheme or plan is evidenced by (1) the restrictions recorded on the plat; and (2) the fact that all the developed lots in the subdivision which constitute 10 out of 12 lots, have private residences on them. Defendants contend that the restrictions on the plat do not apply to Lot A because (1) the common grantor never intended that Lots A and B should be restricted to residential dwellings; and (2) the character of Lots A and B is totally different from that of the rest of the lots in the subdivision in that they are larger, abut on a busy traffic artery and are lettered on the plat rather than numbered.

The language on the plat is of extreme importance. The plat restrictions refer to "Any addition to present *home*," "Each dwelling must have a minimum *living area*," and "Fencing may be installed only in the *back yard* of each lot." (Emphasis added.) All these restrictions, at least arguably, tend to indicate that the subdivision is to be limited to residential dwellings. Further, there is no indication on the plat that these restrictions do not apply to Lot A and B. The fact that Lots A and B are larger than the lots in the rest of the subdivision and abut on a major traffic artery is certainly not conclusive on the point of whether or not the restrictions on the plat limit their utility.

The record before the court seems to raise several substantial factual considerations that could conceivably be decided in favor of either party.

The determination of these factual considerations is properly made after a trial on the merits. The summary judgment procedure is not a substitute for a trial on the merits. Cooper v. Finke, supra. The plaintiffs should have been permitted to develop the relevant facts and circumstances supporting their claim for relief at trial. Accordingly, we" rule that the trial court erred in granting summary judgment on Count II of plaintiffs' petition; and that plaintiffs should have been granted permission to amend Count II.

Judgment affirmed as to Count I, and reversed as to Count II.

WEIER, Acting P. J., and CLEMENS, J., concur.