Darrell R. **PORTER**,
Plaintiff-Respondent,

v.

**LAKE WAUKOMIS ASSOCIATION**,
Defendant-Appellant.

**No. WD 35589.**

Missouri Court of Appeals,
Western District.

Jan. 8, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
March 5, 1985.

James H. Ensz and Lowell C. Gard, Ensz & Jester, Kansas City, for defendant-appellant.

Daniel M. Czamanske, Riverside, for plaintiff-respondent.

Before TURNAGE, C.J., MANFORD, J., and MESSINA, Special Judge.

TURNAGE, Chief Judge.

Darrell Porter brought suit to enjoin the Lake Waukomis Association from seizing a dock he owned and used in conjunction with his home at the lake. The court granted the injunction and the Association appealed.

The Association contends that the court erred in failing to find that Porter's dock violated the restrictive agreement concerning docks at the lake and also erred in failing to award the Association its attorney fees. Affirmed.

Porter owns property at Lake Waukomis, and his lot is subject to the Association's restrictions of record. The Association owns the property between Porter's lot and the lake. It is this area or strip of land to which boat docks are attached. The restrictions require that each year the dock owners obtain a placement permit for their docks.

In 1981 the co-chairman of the Association's dock committee attached a red tag to Porter's dock, and sent Porter a letter which stated that a placement permit had not been issued for his dock because it needed to be painted. Porter had recently installed new siding on his house and so decided to put the same siding on his dock. The co-chairman of the dock committee was notified that Porter proposed to repair his dock and install new siding. The co-chairman informed Porter that this was fine, and did not mention that a permit would be required to do the work.

In the spring of 1982, a contractor employed by Porter towed the dock to the spillway and removed the sides and the deck boards. The contractor incorporated new floor and side boards with the styrofoam flotation and at least three of the old stringers. The dock was 12' x 18' after the repairs; it was 12' x 20' prior to the work.

After the dock repairs were completed and the dock was returned to its original location, someone noticed that the dock had been changed, and brought the matter to the attention of the Association's board of directors. The minutes of the July 13, 1982, board meeting stated: "It was brought to the attention that Mr. Porter had replaced his dock and that also is oversized. [The] [m]otion [was] made that both Dave Smith and Darrell Porter be notified by registered letter that these docks do not comply with dock regulations and that they be cut down to required size of 10 x 12."

Pursuant to this action, the secretary of the Association wrote Porter on July 24, 1982, to inform him that it had been brought to the board's attention that Porter had placed a new dock on the lake without obtaining a building permit and that it exceeded the maximum size of 10' x 12'. The letter stated that the dock was to be reconstructed within 30 days or else the dock would be removed and the dock location forfeited.

Thereafter, Porter's wife attended a board meeting and explained to them that the dock was not new and that the Porters did not believe they were required to cut their dock down to the size of 10' x 12'. The board maintained its original position but did agree to delay removal of the dock until the spring of 1983.

Darrell Porter filed this lawsuit to prevent the Association from carrying out its threat to remove his dock.

The heart of this controversy involves paragraph 4(h) of the restrictions applicable to the Porter property. That provision states:

Docks (excluding boarding ramps) shall be a minimum size of 8' x 10' and a maximum size of 12' x 20', except after March 1, 1975, the maximum size of any new or replacement dock shall not exceed 10' x 12'....

In several of its points, the Association asserts that Porter placed a new or replacement dock on the lake and therefore the maximum size of such dock was limited to 10' x 12'. Porter contends his dock was not a new or replacement dock, but that he had simply repaired his existing dock.

The court found that the dock was not a new or replacement dock, but that Porter's old dock had been repaired.

Black's Law Dictionary 940 (rev. 5th ed. 1979) defines "new":

As an element in numerous compound terms and phrases of the law, this word may denote novelty, or the condition of being previously unknown or of recent or fresh origin, but ordinarily it is a purely relative term and is employed in contrasting the date, origin, or character of one thing with the corresponding attributes of another thing of the same kind or class.

Webster's Third New International Dictionary 1522 (1971) defines "new":

[H]aving existed or having been made but a short time: having originated or occurred lately: not early or long in being.

66 C.J.S. *New* 20 (1950) defines "new": A relative term defined as meaning not yet used or worn; now first used for some purpose; recently made; still unimpaired by use. In its ordinary acceptation, the opposite of the term "old."

In *Kawin v. Chrysler Corp.*, 636 S.W.2d 40, 43 (Mo. banc 1982), the court stated: The term "replace", [with new parts] given its plain and ordinary construction, means to supplant with a substitute or equivalent.

Black's Law Dictionary 1167 (rev. 5th ed. 1979) defines "repair":

To mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction. The word "repair" contemplates an existing structure or thing which has become imperfect, and means to supply in the original existing structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be. (citations omitted)

Webster's Third New International Dictionary 1923 (1971) defines "repair": "[T]o restore by replacing a part or putting together what is torn or broken."

Prior to the repair work, Porter's dock needed paint and several of the boards had rotted. The dock was never removed from the water and the repairs were made while the dock remained floating. The evidence supports the trial court's finding that at least three of the stringers which hold the styrofoam flotation together remained in the dock.

Porter's dock is not a new dock because it is not of recent or fresh origin, nor has it existed for only a short time. Porter simply had his original dock repaired. Neither does Porter's dock constitute a replacement dock. His 12′ x 18′ dock does not "supplant with a substitute or equivalent" the 12′ x 20′ dock. The contractor incorporated new siding and deck boards with the existing stringers and styrofoam in order to repair the dock.

Substantial evidence exists to support the court's finding that Porter did not place a new or replacement dock on the lake, and therefore his dock need not be cut down to the size required of any new or replacement dock after March 1, 1975.

■ The Association contends that Porter performed the repairs without obtaining a repair permit. However, this is directly contrary to the position taken by the Association that Porter did not repair his dock, but in fact placed a new or replacement dock on the lake. It is apparent the Association would not have granted a permit for Porter's dock because of its position that the dock would have to be cut down to 10′ x 12′. Further, the evidence showed that the Association had permitted repairs to be done without permits.

■ In response to Porter's lawsuit, the Association sought a declaratory judgment that Porter's dock violated the maximum size restrictions and was thus subject to removal. The court found against the Association. The Association now seeks to recover its attorney fees based on a restriction provision which provides that the owner must pay the Association's attorney fees if the board determines that it is necessary to commence any suit for the enforcement of the restrictions. The board lost its attempt to enforce its interpretation of its restrictions against Porter. It is settled

that attorney fees in such circumstances may be awarded only when the suit is successful. *Porter v. Hawks Nest, Inc.,* 659 S.W.2d 786, 789[6, 7] (Mo.App.1983). The Association was unsuccessful in its suit and thus was not entitled to an award of attorney fees.

The judgment is supported by substantial and competent evidence and is affirmed.

All concur.