Brady O. FERRELL, et al.,
Plaintiffs/Appellants,

v.

Garrell P. SIMMERLY, Sr., et al.,
Defendants/Respondents.

No. 58388.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 1991.

John Robert O'Connor, Union, for plaintiffs-appellants.

Michael David Hart, Donald H. Clooney, Timothy Anderson, St. Louis, for defendants-respondents.

AHRENS, Judge.

In this bench-tried case, appellants, lot owners in the various blocks of Miramiguoa Park, appeal from the trial court's judgment in favor of respondents Garrell Simmerly, Sr., Dorothy Simmerly, and Garrell Simmerly, Jr. on appellants' petition seeking (1) an injunction against respondents' operation of a campground and canoe rental business, and (2) a declaration that restrictive covenants applicable to blocks one through seven of Miramiguoa Park are also applicable to respondents' property. We affirm.

### I. Background

In June, 1961, Point Centre Development and Investment Corporation acquired a tract of land in Franklin County. Between 1961 and 1965, the corporation subdivided a portion of the tract into five "blocks." Blocks one and two shared a set of recorded restrictions, and were shown on a single recorded plat. Plats and restrictions were recorded separately for each remaining block. Each block was divided into lots, which the corporation sold to individuals. From 1961–1966, the corporation authorized the operation of a commercial gravel business on part of the unsubdivided property.

In 1969, Anthony Podorski purchased all stock in the corporation. At that time, the corporation owned all remaining unsold lots in the various blocks, and all unsubdivided property in the original tract. Thereafter, the corporation subdivided a portion of the unsubdivided property into blocks six and seven. The plat and restrictions on block six were recorded in 1969. The plat and restrictions on block seven were recorded in 1973. The corporation continued to sell lots in the various blocks. From the time Podorski purchased the corporate stock until 1975, another commercial gravel business was permitted to operate within the tract.

In 1982, the corporation sold respondents all remaining subdivided lots, as well as all remaining unsubdivided property in the tract.

When respondents opened a commercial campground and canoe rental operation on the unsubdivided property, appellants filed a three-count lawsuit. In Counts I and II, appellants sought an order (1) enjoining respondents' operation of the campground and canoe rental business, (2) declaring the restrictions applicable to blocks one through seven to be applicable to respondents' unsubdivided property by reason of a reciprocal negative servitude, and (3) requiring that all structures on respondents' property comply with those restrictions.

Count III, involving claims of misrepresentation, was not tried. Following a trial on Counts I and II, the trial court found appellants failed to show a scheme or plan of development that would prevent respondents' current use of the unsubdivided property. The trial court also found there is no reciprocal negative servitude impressed upon respondents' property that would prevent the operation of a campground and canoe rental business. After specifically finding, pursuant to Rule 74.-01(b), that no just reason for delay existed,

the trial court entered judgment in favor of respondents on Counts I and II.

Our review of the trial court's judgment is limited. The judgment will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellants' sole point alleges the trial court erroneously declared and applied the law, and the court's judgment is against the weight of the evidence. We disagree.

We note that restrictive covenants must be strictly construed. *Paddock Forest Residents Ass'n v. Ladue Serv. Corp.*, 613 S.W.2d 474, 477 (Mo.App.1981). The rules for construing restrictive covenants were set out in *Paddock* (citations omitted):

> Language used in the entire instrument, not just one clause, will be considered. If the restriction is unambiguous it is improper to inquire into the surrounding circumstances for aid in its construction. Principles of construction should not be applied in a way to defeat the plain purpose of the restriction. However, if the meaning of a restriction is in doubt, the court must inquire into the intentions of the parties to the agreement and may inquire into the purpose which the parties sought to accomplish and the circumstances surrounding execution of the contract. Any reasonable doubt as to meaning will be resolved in favor of the free use of the land.

*Id.*

Appellants maintain they had a reciprocal negative easement permitting them to enforce restrictions against commercial use upon respondents' unsubdivided property. The court in *Campbell v. Stout*, 408 S.W.2d 585 (Mo.App.1966), discussed the equitable right of a reciprocal negative easement. According to *Campbell*, Missouri recognizes the principal that "when a common grantor develops a tract of land for sale pursuant to a general plan or scheme of improvement, and sells a substantial number of lots subject to restrictions of benefit to the land retained, then the grantees acquire an equitable right, variously called a reciprocal negative easement or implied reciprocal servitude, to enforce a similar restriction against the purchaser of the unrestricted lots who has actual or constructive notice of the restrictions." *Id.* at 589. *See Schneider v. Forsythe Group, Inc.*, 782 S.W.2d 139, 146 (Mo.App.1989).

### General Plan or Scheme of Improvement

■ Contrary to appellants' contention, the restrictions applicable to lots one through seven are not "an almost verbatim repetition of each other," and do not "evidence a common scheme of development of Miramiguoa Park as a whole." A review of the various sets of recorded restrictions shows that the restrictions on each block are not uniform.

Commercial activity is expressly permitted on specified lots in blocks one through six. No commercial activity is permitted within block seven. Further, the restrictions vary from block to block regarding the minimum size of houses, the distances required for set backs, the size of septic tank filter beds, the maximum assessment for failure to cut brush and weeds, whether the lots may be rented or leased, and whether hunting is permitted.

The unambiguous plain language of the restrictions against commercial activity makes those restrictions applicable to the lots in the specific block on which the restriction was filed. No such restrictions were filed on respondents' unsubdivided property. At most, the various restrictions evidence that a general scheme of development existed only as to each individual block. That scheme of development, in all but one block, was a residential community mixed with some commercial activity.

Further, prior to respondents' purchase of the unsubdivided property, a commercial gravel business had operated on a portion of that unsubdivided property. This mitigates against a finding that any general plan or scheme of residential uses only existed as to the entire tract. The trial court's finding that appellants failed to

show the existence of a common plan of development that would prevent respondents' use of the unsubdivided property is not against the weight of the evidence.

### Notice

■ Each set of restrictions provides that "such restrictions and conditions are made, reserved and imposed not only for the benefit of the lot owners of said development, but also for the benefit of other land now owned by the grantor." The deed from the corporation to respondents provides that the conveyance is "SUBJECT to restrictions governing the various plats of Miramiguoa Park of record in [specified books], which among other provisions provides for maintenance, assessments, easements for utilities and building set back lines." Appellants maintain the effect of that paragraph was to incorporate by reference into respondents' deed the various restrictions on blocks one through seven and to put respondents on notice that their property was subject to the restrictions. We disagree.

Appellants correctly point out that the court in *Fairmont Foods Co. v. Skelly Oil Co.*, 616 S.W.2d 548 (Mo.App.1981), held, "use of the term 'subject to' in a deed conveying an interest in real property is a qualification of the estate granted." *Id.* at 553. However, due to the significant differences and lack of uniformity among some restrictions on the various blocks it would be unreasonable to find that respondents' unsubdivided property is qualified by all restrictions of record on the various blocks.

Appellants contend that "[e]ach set of restrictions contains the reservation of each owner's common use privilege for the Miramiguoa Park Development." This, appellants argue, "confirms the inconsistency of public commercial use." Appellants' argument ignores the clear language of the restrictions on all but one block which expressly permit commercial use on specified lots. We find no support in the restrictions for a distinction between *public* commercial use and *private* commercial use.

As noted, specific lots in all but one block were expressly exempted from any restriction against commercial use. There are no limitations in the various restrictions as to the type of commercial enterprise which could be operated on those exempted lots. Therefore, it appears that a campground or canoe rental business could be operated on those designated subdivided lots. Accordingly, appellants could have no *reciprocal* negative easement against respondents' operation of a campground or canoe rental business on the unsubdivided property.

While each set of restrictions expressly benefitted the unsubdivided property remaining at the time the restrictions were filed, there is nothing in the restrictions, as appellants suggest, indicating an intent that the unsubdivided property was to be burdened by those restrictions. Appellants rely on the following provision set forth in each set of restrictions:

> Whereas, the POINT CENTRE DEVELOPMENT & INVESTMENT CORPORATION in consideration of the premises and for the mutual benefit of itself and the owner of these several lots of said development, hereby agree to establish certain easements, restrictions and conditions to run with the land as to both grantor and lot owners, their heirs, successors and assigns as follows: That such restrictions are made, reserved and imposed not only for the benefit of the lot owners of said development, but also for the benefit of other land now owned by the grantor.

While this provides that the restrictions run with the land on which those restrictions are imposed, there is nothing in that provision indicating that the property outside the particular block was intended to be burdened by those restrictions.

In light of the lack of uniformity, and the absence of any evidence in the restrictions indicating that the unsubdivided property was intended to be burdened by the restrictions, respondents were not put on notice of any restriction prohibiting the unsubdivided property from being used as a commercial campground and canoe rental operation. Moreover, respondents' knowledge

that a portion of the property had been previously used as a commercial gravel operation negates the assertion that respondents were put on notice that the unsubdivided property could not be used for commercial activity.

We find no error in the trial court's application and declaration of the law. The trial court did not err in finding that appellants failed to show the existence of a general scheme of development applicable to the entire tract of land once owned by Point Centre Development and Investment Corporation. There is sufficient support for the trial court's finding that respondents had no notice of any common scheme of a residential-only development. The trial court's conclusion that appellants have no reciprocal negative easement or right to enjoin respondents' use of the unsubdivided property is not against the weight of the evidence.

Appellants' sole point is denied. The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.