J. Daniel HOAG, et al., Appellants/Cross–Respondents,

v.

McBRIDE & SON INVESTMENT CO., INC., et al., Respondents/Cross–Appellant.

No. 71489.

Missouri Court of Appeals, Eastern District, Division Three.

March 10, 1998.

Application for Transfer Denied June 16, 1998.

Thomas B. Weaver, Paul N. Venker, Armstrong, Teasdale, Schlafly & Davis, Timothy Phillips, Phillips & Phillips, St. Louis, for Appellants.

John W. Moticka, Lisa A. Nielsen, Greensfelder, Hemker & Gale, St. Louis, G. Carroll Stribling Jr., Mary W. Murphy, Ziercher & Hocker, Clayton, for Respondents.

AHRENS, Presiding Judge.

## I. Introduction

Plaintiffs, landowners and trustees of the Riverwood Development Association, filed a seven count petition against the developers of Riverwood, Community Savings Service Corporation and McBride Investments. Plaintiffs' claims related primarily to the creation of a covenant in favor of plaintiffs regarding a 9.5 acre plot of land. Defendants filed motions with the trial court seeking either dismissal or summary judgment of plaintiffs' claims. Plaintiffs filed a motion for partial summary judgment on their claims. The trial court granted both defendants' and plaintiffs' motions in part and entered judgment accordingly. Both plaintiffs and McBride appeal from the trial court's judgment. We affirm.

## II. Facts

Community Savings Service Corporation (CSSC) purchased the 9.5 acre tract in dispute as part of its acquisition in 1972 of 327 acres of property that now constitute the Riverwood Development in Northwest St. Louis County. In the Master Indenture for the Riverwood Development, CSSC divided the Riverwood Development into Riverwood Estates, Riverwood Trails and multi-family and elderly areas. The 9.5 acres in question lie at the southeast corner of the Riverwood Estates' portion of the development and is bordered by Howdershell Road to the east.

Sometime after it acquired the 327 acres, CSSC sought to rezone the 327 acres for real estate development. The Planning Commission recommended the rezoning and the St. Louis County Council adopted that recommendation and rezoned the property for real estate development.

In 1977, CSSC petitioned St. Louis County to establish a Planned Environmental Unit (PEU) known as the Riverwood Development. A PEU is an alternative zoning procedure giving the developer more flexibility by permitting it to put differing building types, including supporting community facilities, on the same development to promote diverse, sound, urban developments. *See* S.L.C.R.O. section 1003.187(2). Also, the general PEU zoning ordinance for St. Louis County, ordinance 1003.187, requires the County Council to determine density limitations for each development before it grants approval of the developer's final development plan.

St. Louis County granted CSSC initial permission to develop Riverwood as a PEU in 1978 when it adopted Ordinance 8674. As part of obtaining final approval for its proposed PEU, section 1003.187 required CSSC to submit a final development plan for the Riverwood Development and to record indentures for the development. S.L.C.R.O. section 1003.187.

CSSC submitted its final development plan for Riverwood to the St. Louis County Planning and Zoning Commission in October 1978. The relevant portion of the Final Development Plan shows R–2 and R–3 residential development only with no commercial development on the property. Also, the plan states that the 9.5 acre site in question was "reserved for school site" and "this area is

part of the PEU legal description-reserved for school site, comply with St. Louis County Ordinance No. 8574 (the ordinance approving the Riverwood PEU) Condition 4–C." Condition 4–C recites:

"Provide for the dedication of the school site as indicated in the final development plan to the Hazelwood School District. If such dedication is not accepted, or if it is refused, within three years after 90% of the residential units are completed, the dedication instrument shall provide for an offer to the St. Louis County for use as a public park. If the property is not accepted by St. Louis County for the public park use, or is refused for such use, within three years after 90% of the residential units are developed, then the property shall either vest in the trustees as common ground, or if there is available unused density credits under this ordinance, the site may be developed for residential uses."

The St. Louis County Council approved CSSC's final development plan in October, 1978 and CSSC recorded the plan with the St. Louis County Recorder of Deeds.[1]

In December 1978 CSSC prepared and recorded the Riverwood Development Master Indenture. The Master Indenture recites that the Riverwood Development would be divided into three areas: (1) Riverwood Estates; (2) Riverwood Trials; and (3) multi-family and elderly areas. The indenture also states that each record owner automatically becomes a member of the Riverwood Development Association. Paragraph 10(c) of the indenture states that the trustees of the Riverwood Development Association or any lot owner have the right to enforce all covenants, conditions, restrictions and provisions of the Master Indenture. CSSC amended paragraph 10(c) in 1981 so that the trustees had the right to collect their legal fees against any owner in enforcing any covenant, restriction, rule or regulation.

A joint venture between CSSC and several subsidiaries of McBride and Sons began to develop Riverwood in early 1979. CSSC and McBride sold all lots in Riverwood by war-

ranty deed subject to all restrictions and ordinances of record and by reference to the lot number on the development plan.

CSSC and McBride offered the 9.5 acres in question to the St. Louis County Parks Department on January 7, 1985, pursuant to Condition 4–C and the Riverwood Final Development Plan. The Parks Department refused the 9.5 acres, citing its belief that the maintenance of such a small tract of land resulted in an extremely high cost to benefit ratio. CSSC and McBride then offered the 9.5 acres to the Hazelwood School District in April 1985. The Hazelwood School District refused the 9.5 acres because the development of the land as a school would not be cost effective.

In August 1985, McBride requested the St. Louis County Planning Commission to delete Condition 4–C because McBride wanted to develop the 9.5 acres residentially. In this request, McBride claimed that the Parks Department and the Hazelwood School District had refused the 9.5 acres and that general density credits were available for further residential development.

The Planning Commission recommended the deletion of Condition 4–C to the St. Louis County Council because it found that density credits were available for additional residential development under the Riverwood PEU. The Council approved the amendment of the Riverwood PEU by deleting Condition 4–C in September 1985.

In December 1985, CSSC conveyed title to the 9.5 acres of land to the Riverwood Estates Development Company, a joint venture between CSSC and McBride. Riverwood Estates Development then conveyed title to the disputed tract of land in February, 1986 to Riverwood Place Development, another joint venture between CSSC and McBride. Next, Riverwood Place Development conveyed title to the 9.5 acres in September 1989 to McBride Investment, a subsidiary of McBride & Sons Investment, Co. In 1990, the Resolution Trust Company (RTC) placed

---

1. In 1980, St. Louis County Commission approved CSSC's request to file an amended final development plan for Riverwood. The 1980 plan did not amend the 1978 plan in any manner relevant to this dispute.

CSSC's parent corporation, Community Federal Savings and Loan, into receivership.

In late 1989, McBride informed the homeowners in Riverwood Development that it intended to petition the St. Louis County Council to rezone the 9.5 acres so that it could develop the property commercially. At that time, McBride had sold all 364 homes in Riverwood Trials and had sold 400 of the 436 homes in Riverwood Estates. The St. Louis County Council granted McBride's request and rezoned the 9.5 acres for commercial use in 1990.

Plaintiffs, as individual landowners and trustees of the Riverwood Development Association, filed a four count petition against McBride and CSSC in June 1990. Plaintiffs filed their third amended petition in December 1993.

Plaintiffs' third amended petition contained seven counts. In Count I, Plaintiffs sought a declaration from the trial court that McBride and CSSC entered into a binding agreement with the Riverwood landowners that title to the 9.5 acres would vest in the trustees if the Parks Department and the School District refused the land. Plaintiffs also requested the trial court to force McBride to comply with this promise by granting plaintiffs' request for specific performance of the agreement.

Counts II and III were negligent and intentional misrepresentation claims based on certain representations McBride and CSSC made to prospective home buyers. Plaintiffs claimed in Count IV that CSSC and McBride dedicated the disputed land to the public when it designated the land as "reserved for school" and "developed according to Condition 4–C" in its 1978 final development plan.

In Count V of their petition, plaintiffs requested the trial court to declare that CSSC and McBride had created an easement in favor of the landowners so that title to the 9.5 acres would vest in the trustees to be used as common ground. Plaintiffs' Count VI was an action for breach of fiduciary duty against certain former trustees of the Riverwood Development Association. In their final count, plaintiffs asserted an ejectment action against McBride. Plaintiffs also petitioned the trial court to order McBride and CSSC to pay their attorney's fees pursuant to paragraph 10(c) of the master indenture.

CSSC, McBride and the former trustees filed motions to dismiss or in the alternative for summary judgment as to all of plaintiffs' counts. Plaintiffs filed a motion for partial summary judgment as to Counts I and V of their petition. The trial court granted CSSC's motion to dismiss as to all of plaintiffs' counts on July 5, 1994. On August 30, 1995 the trial court granted McBride's motion for summary judgment as to Count I and denied plaintiffs' motion for partial summary judgment as to that count. The trial court granted the former trustees' motion for summary judgment on plaintiffs' Count VI for breach of fiduciary claim on April 18, 1996.

On July 15, 1996, the trial court granted, in part, plaintiffs' motion for partial summary judgment on Count V of its petition. The trial court decreed that the 9.5 acre site was subject to a negative reciprocal covenant in favor of the landowners prohibiting the commercial development of the site. However, the trial court also held that under the provisions of Condition 4–C, because unused density credits were available, title to the site did not vest in the trustees as common ground and McBride could develop it residentially. The trial court then dismissed plaintiffs' intentional and negligent misrepresentation claims as moot in light of its declaration that the 9.5 acre site was subject to a negative reciprocal easement prohibiting commercial development of the property.

On September 18, 1996 the trial court granted McBride's motions to dismiss plaintiffs' dedication (Count IV) and ejectment (Count VII) claims. Finally, the trial court denied plaintiffs' request for their attorney fees pursuant to paragraph 10(c) of the Riverwood Master Indenture on September 19, 1996.

Plaintiffs appeal the trial court's order granting McBride's motions for summary judgment as to Counts I–IV of their third amended petition. Plaintiffs also appeal the trial court's holding that under Condition 4–C, title to the 9.5 acre site did not vest in the trustees and that the disputed property can

be developed residentially. Plaintiffs further appeal the trial court's order granting CSSC's motion for dismissal as to Counts II and III. Finally, plaintiffs appeal the trial court's order refusing to order McBride to pay their attorney fees. McBride cross appeals the trial court's order finding that CSSC created an implied negative easement in favor of the Riverwood landowners consistent with Condition 4–C and the order assessing costs against McBride.

### III. Analysis

#### A. *The parties' compliance with Rule 74.04(c)*

As an initial matter, plaintiffs assert that both McBride and CSSC's motions for summary judgment do not comply with Rule 74.04(c)(1) and McBride alleges that plaintiffs' motion also fails to comply with the Rule. We disagree.

■ Rule 74.04(c)(1) requires the moving party to state with particularity in separately numbered paragraphs each material fact as to which it claims there is no genuine issue of fact with specific references to the pleadings, discovery or affidavits that establish the lack of a genuine issue as to such facts. *American Family Ins. Co. v. Pettigrew*, 916 S.W.2d 893, 894 (Mo.App.1996). Here, CSSC's motion sets out 36 allegedly undisputed facts with references to the pleadings, discovery or affidavits in separately enumerated paragraphs. This motion complies with the requirements of the Rule.

■ McBride's motion for summary judgment also states each material fact to which it claims there is no genuine issue and cites specific references to the pleadings, discovery or affidavits which establish the lack of a genuine issue to those facts. However, McBride combined its motion for summary judgment and its memorandum of law in support of the motion into one document. This is not in technical compliance with Rule 74.04(c)(1) which requires the movant to attach a **separate** legal memorandum explaining why the court should grant the motion. (Emphasis Added). However, because McBride's motion clearly identifies the alleged undisputed facts and gives specific ref-

erences supporting that allegation, it provided the plaintiffs, the trial court and this court with the basis of its argument. In such a situation, we will not reverse the trial court's judgment awarding summary judgment simply because the motion is not in technical compliance with Rule 74.04(c)(1). *Mathes v. Nolan*, 904 S.W.2d 353, 355 (Mo.App.1995).

■ Plaintiffs' motion for summary judgment also does not technically comply with Rule 74.04(c)(1) in that it does not give a specific reference to the pleadings, discovery or affidavits for every allegedly undisputed fact. However, plaintiffs' motion explicitly cites which documents they were relying on to demonstrate a lack of a genuine issue as to each material fact. Accordingly, plaintiffs' motion provided its opponent, the trial court and this court with the basis for its argument that it was entitled to summary judgment. Therefore, we will not reverse the trial court's partial summary judgment for plaintiffs for failure to comply with Rule 74.04. *Nolan*, 904 S.W.2d at 355.

#### B. *The propriety of the trial court's order granting plaintiffs' motion for summary judgment as to the creation of an easement in favor of the landowners.*

As indicated above, the trial court granted, in part, plaintiffs' motion for summary judgment in declaring that there was no material issue of fact that CSSC and McBride created a negative easement in the disputed 9.5 acres in favor of the landowners consistent with Condition 4–C of the Riverwood PEU ordinance. McBride appeals, arguing that the trial court erred in both granting plaintiffs' motion as to Count·V and denying its motion as to that count. Plaintiffs also appeal, arguing that the trial court misconstrued Condition 4–C and therefore misconstrued the terms of the covenant. We find that the trial court correctly found that CSSC created a covenant in favor of the Riverwood landowners in the 9.5 acres in accordance with Condition 4–C and correctly interpreted Condition 4–C.

A moving party is entitled to summary judgment if it demonstrates, with appropriate references to the record, that there is no

genuine issue of material fact so that it is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993); Rule 74.04(c). Because the party must demonstrate that it is entitled to judgment as a matter of law, our review of the trial court's order is de novo. *ITT*, 854 S.W.2d at 376. In determining whether the trial court's judgment granting, in part, plaintiffs' motion for summary judgment on Count V was appropriate, we must address several issues.

1. *Did CSSC create a covenant in favor of the Riverwood landowners regarding the 9.5 acre site?*

■ Developers of residential property create a covenant benefiting all future land-owners of the development by restricting the use of a particular piece of property in one of three ways. First, the developer may create a covenant by placing the restriction on the use of the burdened property in the deeds it gives to both the person seeking to enforce the restriction and the person who owns the burdened property. *Kuhn v. Saum*, 316 Mo. 805, 291 S.W. 104, 105 (1926). Second, the developer may create a covenant in favor of all landowners by properly recording the terms of the covenant. *Id.* Finally, the developer may create a covenant in favor of all landowners by developing and selling the land pursuant to a common plan or scheme of improvement. *Id.; Ferrell v. Simmerly*, 812 S.W.2d 228, 230 (Mo.App.1991).

■ Any benefited landowner may enforce these covenants by bringing a suit in equity. Specifically, Missouri Courts have allowed landowners to bring actions seeking to enjoin the improper use of the burdened land, *Dowd v. Lake Sites, Inc.*, 365 Mo. 83, 276 S.W.2d 108, 113 (1955), and actions for specific performance, compelling the owner of the burdened land to comply with the terms of the covenant. *Beets v. Tyler*, 365 Mo. 895, 290 S.W.2d 76, 80–81 (1956).[2]

■ Missouri Courts have long held that a developer creates covenants in favor of all landowners by clearly including the restrictions in an accurate plat of the development that it properly records. *Zinn v. Sidler*, 268 Mo. 680, 187 S.W. 1172, 1173 (1916); *Larkin v. Kieselmann*, 259 S.W.2d 785, 788 (Mo. 1953). Here, CSSC's final development plan and its amended final development plan include a map of the proposed Riverwood Development showing the 9.5 acres in dispute as "reserved for school site" and "this area is part of the PEU legal description-reserved for school site, comply with St. Louis County Ordinance No. 8674 (9931 for the amended plan) Condition 4–C". Also, CSSC recorded both the final development plan and the amended final development plan in the St. Louis County Recorder of Deeds of Office. Further, the warranty deeds CSSC and McBride gave to the landowners refer to the lot numbers in these recorded development plans.

CSSC asserts that the map of the proposed Riverwood Development it included in the final development plan and amended final development plan does not constitute a "plat" and therefore does not create a covenant in favor of the landowners. CSSC bases this assertion on the argument that because it did not denominate those plans as a "plat" and because it could have theoretically amended them in the future, the plans were not "plats". We find that CSSC's definition of the term "plat" is excessively narrow and does not comport with the common understanding of the term.

■ The statutes governing the proper filing of plats or maps only require that the appropriate local governing body approve the proposed map or plat and that the local governing body endorse its approval on the face of the map before the developer can record it. Sections 89.440 and 445.030 RSMo (1994).[3] The Missouri Legislature did not provide a definition of the term "plat" in the

---

**2.** We note that a subsequent purchaser takes the property subject to the covenant only if it had actual or constructive notice that the covenant burdened the land. *Parkton Association v. Armstrong*, 878 S.W.2d 50, 53 (Mo.App.1994). McBride took the 9.5 acre site with constructive notice of the covenant because CSSC recorded the terms of the covenant. *Id.*

**3.** All statutory references are to RSMo. (1994) unless otherwise indicated.

statutes relating to the recording of subdivision maps or plats.

When the legislature does not provide the definition of a disputed term, a court must glean the plain and ordinary meaning of the undefined term from a dictionary definition existing at the time of enactment. *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993). Webster's Dictionary defines "plat" as "a precise and detailed plan showing the actual or proposed divisions, special features, or uses of a piece of land as a town or town site or a real estate subdivision". Webster's Third International Dictionary (1961). Edward H. Ziegler, The Law of Zoning and Planning, Section 62–3 (1991) defines the term "plat" as any depiction of the division of one tract into a number of smaller lots with eventual separate ownership of each lot.

In the instant case, CSSC's final development plan thoroughly depicted the proposed subdivision and development of Riverwood and recites the special feature and uses on particular parcels of land. The plan also unequivocally states that the 9.5 acres will be developed according to Condition 4–C. Therefore, we must conclude that CSSC's final development plan of the Riverwood Development was a "plat" as that term is commonly defined.

The St. Louis County Council approved the proposed plat and endorsed that approval on the face of the plat before CSSC recorded it as required by statute. Also, the general warranty deeds CSSC and McBride gave to the landowners refer to the lot numbers in these recorded plats. Therefore, under *Zinn* and *Larkin*, CSSC created a covenant in favor of all future Riverwood homeowners restricting the development of the 9.5 acres in question according to the terms of Condition 4–C.

2. *What is the scope of the covenant?*

The next step in our analysis of determining what interest the Riverwood landowners have in the 9.5 acres is to construe the provisions of Condition 4–C. As we have illustrated above, the relevant portion of Condition 4–C states that after the Parks Department and the School Board had refused the land "then the property shall either vest in the trustees as common ground, or if there is available unused density credits under this ordinance, the site may be developed for residential uses".

None of the parties challenge the trial court's finding that Condition 4–C mandates that if no density credits were available, then the property must vest in the trustees as common ground. However, plaintiffs' argue that the "site may be developed for residential uses" portion of Condition 4–C refers to what the **trustees** may do with the property if unused density credits were available. Thus, under plaintiffs' interpretation of Condition 4–C, once the Parks Department or the School Board refused the property, title to the property vested in the trustees. We find plaintiffs' interpretation of Condition 4–C untenable.

We will apply the rules governing the construction of contracts when construing the terms of a covenant. *Forst v. Bohlman*, 870 S.W.2d 442, 446 (Mo.App. 1994). The primary rule in construing a covenant is to ascertain the intent of the parties and thus to give effect to those intentions in light of the circumstances surrounding the transaction. *Ezenwa v. Director of Revenue*, 791 S.W.2d 854, 859 (Mo.App.1990).

Here, the interpretation of Condition 4–C advanced by plaintiffs suggests that the parties intended to allow the trustees to develop the 9.5 acres residentially if the Parks Department and the School Board refused the property and if general density credits were available. We do not think that this was the parties' intent given the fact that CSSC and McBride, not the trustees, are land developers. Rather, viewing the plain language of Condition 4–C in light of the surrounding circumstances, it is clear that the parties intended to allow CSSC, or its successor in interest, to develop the land residentially if the Parks Department or the School District refused the 9.5 acres and density credits were available.

As plaintiffs point out, McBride requested the County Council to delete Condi-

tion 4–C because it wanted to develop the 9.5 acres residentially. Thus, there is strong evidence that McBride felt that Condition 4–C did not allow it to develop the 9.5 acres residentially. *See Cozart v. Green Trails Management Corp.,* 501 S.W.2d 184, 188 (Mo. App.1973). If the language of the Condition 4–C was ambiguous, we would have placed great weight upon McBride's interpretation of Condition 4–C. *See Aetna Casualty & Surety Co. v. Haas,* 422 S.W.2d 316, 320–21 (Mo.1968). However, because the language of Condition 4–C is unambiguous in light of the surrounding circumstances, we need not move beyond the four corners of the contract to construe its meaning. *Id.* at 320; *Forst,* 870 S.W.2d at 446. Therefore, the trial court correctly found that Condition 4–C allows McBride to develop the 9.5 acre site residentially *if general density credits were available.*

Plaintiffs also allege that an interpretation of Condition 4–C which allows McBride to develop the 9.5 acres residentially would render it in conflict with the relevant section of St. Louis County's General PEU enabling ordinance, section 1003.187.11(8). It is true that when a specific ordinance is in conflict with a general ordinance, the general ordinance must prevail and render the specific ordinance void. *Waeckerle v. Bd. of Zoning Adjustment,* 525 S.W.2d 351, 359 (Mo.App.1975). However, in the instant case we do not find a conflict between Condition 4–C of the specific Riverwood PEU ordinance and section 1003.187.11(8) of the general PEU ordinance.

Section 1003.187.11(8) provides:

11. Dedication for Public Schools and Public Parks. A PEU may include land designated for dedication for public schools or public park use, which may be considered part of the gross acreage of the development in computing the maximum number of lots that may be created or dwellings units that may be authorized, provided that:

. . .

8. The deed of dedication for public park or public school use shall provide that in the event the property shall no longer be used for that purpose, it will revert to the trustees of the subdivision in which it is located as common land.

Condition 4–C dictates at what time CSSC and McBride were required to offer a deed of dedication to the Parks Department or the School Board. Section 1000.187.11(8) dictates what CSSC and McBride would have been required to include in its deed of dedication had either the Parks Department or School Board accepted the site. Here, neither the Parks Department nor the School District accepted CSSC or McBride's offer of dedication. Thus, the requirements of section 1000.187.11(8) were not applicable to CSSC or McBride in the instant case.

Plaintiffs further contend that the trial court should have considered the alleged representation McBride and CSSC made orally and in sales brochures to potential homeowners in determining the nature and scope of the covenant. Plaintiffs argue that these representations, outside of the applicable land records, constitute evidence that McBride and CSSC developed Riverwood under a common plan or scheme that the 9.5 acres would be only a park, school or common ground. We disagree.

A developer of land may create a covenant in favor of landowners by developing the land pursuant to a common plan or scheme. *Kuhn v. Saum,* 316 Mo. 805, 291 S.W. 104, 105 (1926); *Campbell v. Stout,* 408 S.W.2d 585, 589–90 (Mo.App.1966). However, if the recorded instruments contain the scope of the covenant, the landowners cannot expand that scope by introducing evidence outside of the recorded instruments. *Kuhn,* 291 S.W. at 105; *Kansas City v. Stith,* 409 S.W.2d 193, 199 (Mo.1966).

In the instant case, recorded instruments, the 1978 and 1980 plats, contain the scope of the covenant because they explicitly state that CSSC will develop the 9.5 acre site pursuant to Condition 4–C. Therefore, the trial court correctly determined that the plaintiffs cannot introduce any representation CSSC or McBride made orally or in

sales brochures to potential purchasers in demonstrating the scope of the covenant.

■ Plaintiffs further argue that CSSC and McBride are estopped from denying the scope of the covenant is that it would only be a school, park or common ground because of the representation they made to potential home buyers. It is true that landowners may use a developer's oral representations as the basis of an equitable estoppel defense against the developer or its successor. *See Hetzler v. Millard*, 348 Mo. 198, 153 S.W.2d 355, 359–60 (1941).

■ However, equitable estoppel is an affirmative defense or an affirmative avoidance in response to an affirmative defense. *Exchange National Bank v. Wolken*, 819 S.W.2d 45, 47–48 (Mo. banc 1991). Thus a plaintiff may not use estoppel as a basis for a cause of action. *Emery v. Brown Shoe Co.*, 287 S.W.2d 761, 768 (Mo.1956). Here, plaintiffs attempted to utilize their estoppel argument as a basis for their cause of action for specific performance in Count I against McBride. The trial court, therefore, did not err in rejecting plaintiffs' estoppel argument.

3. *Did action taken by the St. Louis County Commission destroy the Riverwood landowners' interest in the 9.5 acre site?*

■ McBride and CSSC argue that any interest the Riverwood landowners may have had in the 9.5 acres has been destroyed by two actions of the St. Louis County Council. First, McBride and CSSC contend that the landowners have no interest in the 9.5 acres under Condition 4–C because the St. Louis County Council deleted Condition 4–C in 1985. We disagree.

■ A landowner has a protectable property interest in a covenant that benefits the land. *London v. Handicapped Facilities Bd.*, 637 S.W.2d 212, 215 (Mo.App.1982); *Dowd*, 276 S.W.2d at 113. Consequently, a landowner's interest in a covenant cannot be terminated unless (1) the landowner voluntary consents to the termination, *Larkin*, 259 S.W.2d at 788, (2) a governmental entity institutes a proper condemnation proceeding, *London*, 637 S.W.2d at 215 or (3) the neighborhood has changed so significantly as to defeat the purpose of the covenant. *Matthews v. First Christian Church*, 355 Mo. 627, 197 S.W.2d 617, 619 (1946).

Here, there is no evidence that the County's deletion of Condition 4–C in 1985 was with the Riverwood landowners' voluntary consent. Also, the County's deletion was not pursuant to a condemnation proceeding. Finally, there is no evidence that the surrounding neighborhood has changed so substantially as to defeat the purpose of the covenant. Accordingly, St. Louis County's deletion of Condition 4–C did not affect the landowners' rights in the 9.5 acres.

■ McBride and CSSC also contend that St. Louis County's rezoning of the land in 1990 for commercial development destroyed the landowners' interest in the 9.5 acres. However, our Supreme Court has held that zoning ordinances cannot defeat the rights of a landowner in a covenant because zoning is not a proper condemnation action. *Matthews*, 197 S.W.2d at 619–20. Therefore, the 1990 zoning ordinance allowing McBride to develop the 9.5 commercial had no effect upon the covenant CSSC created when filing the 1978 and 1980 plats.

4. *Did plaintiffs have standing to enforce the covenant?*

■ McBride and CSSC further contend that plaintiffs do not have standing to enforce the covenant as trustees of the Riverwood Development Association. An association has standing to assert a cause of action on behalf of its members if: (1) its members would otherwise have standing to bring suit in their own right, (2) the interest it seeks to protect is germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Missouri Outdoor Advertising Assn., Inc. v. Missouri State Highways and Transportation Commn.*, 826 S.W.2d 342, 344 (Mo. banc 1992).

■ McBride alleges that element three is not present in the instant case because plaintiffs argue that representations CSSC and McBride made to individual potential homeowners constitute a part of the cove-

nant. However, as we have illustrated above, only the restrictions contained in the recorded 1978 and 1980 development plans constitute the scope of the covenant. Because the trustees can prove the existence and scope of the covenant by referring to a common, recorded instrument, neither the claim asserted nor the relief requested requires the participation of the individual landowners. Therefore, the plaintiffs as trustees of the association had standing to enforce the provisions of the covenant.

C. *The propriety of the trial court's order granting summary judgment in favor of McBride as to plaintiffs' specific performance claim.*

■ The trial court also granted McBride's motion on plaintiffs' Count I for specific performance in finding that there was no material issue of fact that general density credits were available after the Parks Department and the Hazelwood School Board had refused the 9.5 acre site. Therefore, the trial court held that title to the site did not vest in the plaintiffs. A movant, who is not a claimant, meets its *prima facie* burden for summary judgment if it demonstrates, by reference to the record, that there is no genuine dispute as to any material fact so that it is entitled to judgment as a matter of law. *ITT Commercial Finance Corp.*, 854 S.W.2d at 380; Rule 74.04(c)(1). Once the moving party has met its *prima facie* burden, the non-moving party must proffer admissible evidence, outside its pleadings, which creates a genuine issue of material fact. *ITT*, 854 S.W.2d at 380; Rules 74.04(c)(2); 74.04(e).

■ Here, McBride offered a letter from the Chair of the St. Louis County Planning Commission, Donald McKay, to the St. Louis County Council in support of its motion. In this letter, Mr. McKay recites that general density credits were available for residential development of the 9.5 acre site after the Parks Department and the Hazelwood School Board had refused the property. Plaintiffs admitted in their suggestions in opposition to McBride's motion that this letter was a true and accurate copy of the letter from the planning commission to the county council.

On these facts, we find that McBride met its *prima facie* burden of demonstrating that there was no material issue of fact that density credits were available after the Parks Department and School Board had refused the site.

■ Plaintiffs attempted to create a genuine issue of fact regarding the availability of density credits by proffering calculations that differed from those of the planning commission. However, only plaintiffs' attorney performed these calculations. Plaintiffs did not attach an affidavit or other admissible evidence to their suggestions supporting their contention that there was a genuine issue of fact relating to the availability of density credits. There was no summary judgment fact, in evidentiary form, opposing the existence of available credits. Consequently, plaintiffs failed to create a genuine issue of material fact regarding the availability of density credits after the Parks Department and School District had refused the site.

We find that there is no genuine issue of material fact as to whether general density credits were available for residential development of the 9.5 acres after the Parks Department and the School Board had refused the site. Thus, there is no genuine issue of fact that under Condition 4–C, McBride could develop the 9.5 acres residentially. The trial court, therefore, did not err in granting McBride's motion for summary judgment as to Count I of plaintiffs' petition for specific performance.

D. *Plaintiffs' misrepresentation claims*

■ The trial court granted both CSSC and McBride's motion to dismiss plaintiffs' intentional and negligent misrepresentation claims contained in Counts II and III. In reviewing a dismissal of a claim, we treat all facts alleged as true, construing the allegations favorably to plaintiffs and affirm only if the petition fails to state a cause of action. *Brown v. Missouri Highway & Transportation Com.*, 805 S.W.2d 274, 277 (Mo.App. 1991). Also, we will affirm the dismissal of a suit if the dismissal can be sustained on any ground regardless of whether the trial court relied on that ground. *Property Exchange &*

*Sales, Inc. v. King,* 822 S.W.2d 572, 573 (Mo.App.1992).

■ The trial court granted CSSC's motion to dismiss based on its finding that the *D'Oench* doctrine protected the RTC as receiver of Community Federal against all claims that were not based on a written agreement. *See D'Oench, Duhume & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). However, the *D'Oench* doctrine does not protect the RTC when it is simply acting as a receiver as in the present case, as opposed to its role as an insurer of an insolvent bank. *Ledo Financial Corp. v. Summers,* 122 F.3d 825, 829 (9th Cir.1997). Thus, the *D'Oench* doctrine does not protect CSSC in the instant case.

■ The trial court premised its dismissal of plaintiffs' misrepresentation claims against McBride on its determination that its finding that the 9.5 acre site was subject to a covenant in favor of the Riverwood landowners rendered plaintiffs' misrepresentation claims moot. However, plaintiffs based their misrepresentation claims on alleged representations that (1) the 9.5 acres would either be a school, park, or common ground only, (2) McBride and CSSC would install "old-style" street lights and (3) there would be thirty acres of unspoiled wilderness in Riverwood. The trial court's finding did not address the representations relating to the installation of the "old style" streetlights or the thirty acres of unspoiled wilderness. Therefore, the trial court's granting of plaintiffs' motion for partial summary judgment did not render plaintiffs' misrepresentation claims moot. However, we affirm the trial court's dismissal of plaintiffs' misrepresentation claims for the following reasons.

*1. Did plaintiffs have standing to assert the misrepresentation claims?*

McBride argues that plaintiffs, as trustees of the association, lack standing to assert the misrepresentations claims. Although we do agree with this argument, we still find that plaintiffs had standing to bring misrepresentation claims as individual purchasers of lots in the Riverwood development.

■ As we illustrated above, an association has standing to assert a cause of action on behalf of its members if: (1) its members would otherwise have standing to bring suit in their own right; (2) the interest it seeks to protect is germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Missouri Outdoor Advertising Assn.,* 826 S.W.2d at 344. Here, plaintiffs' claims include different representations allegedly made by CSSC and McBride to different prospective homebuyers at different times over a period of approximately ten years. Also, plaintiffs must establish that each prospective homeowner heard and relied upon the alleged misrepresentations and the damages that each homeowner suffered. *See Emerick v. Mutual Benefit Life Ins. Co.,* 756 S.W.2d 513, 519 (Mo. banc 1988). Thus, the prosecution of the misrepresentation claims would require the participation of each individual homeowner. Therefore, plaintiffs, as trustees of the association, do not have standing to assert the misrepresentation claims.

■ Although plaintiffs do not have standing as trustees to assert misrepresentation claims, they do have standing to bring suit as individual homebuyers. Thus, plaintiffs have standing to assert misrepresentation claims based on the allegedly false statements CSSC and McBride made to them individually as prospective homebuyers.

■ The plaintiffs did allege, in paragraphs 65(h)(i)-(xiv) of their third amended petition, that McBride and CSSC made false representations to the individual plaintiffs regarding the development of the 9.5 acre site while the plaintiffs were contemplating purchasing homes in Riverwood. However, these allegations do not contain any alleged representations regarding the installation of "old-style" street lights or the thirty acres of unspoiled wilderness. Thus, plaintiffs have failed to state a cause of action for misrepresentation against CSSC and McBride's regarding the installation of "old-style" street lights or the thirty acres of unspoiled wilderness.

## 2. Did plaintiffs' state a claim for negligent misrepresentation?

 The second reason McBride advances as to why we should affirm the trial court's ruling is that plaintiffs have failed to state a cause of action for negligent misrepresentation. As one court has noted, it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions. *Jacobs Mfg. Co. v. Sam Brown Co.*, 792 F.Supp. 1520, 1528 (W.D.Mo.1992) (citing Rest. (Second) of Torts section 530, cmt. b (1977)). Even if the speaker is merely uncertain regarding the truth of the statement of future intention, the statement is fraudulent rather than negligent because the speaker is ignorant of the statement's truth. *Jacobs*, 792 F.Supp. at 1528; *Emerick*, 756 S.W.2d at 519. Accordingly, a negligent misrepresentation claim cannot arise from a statement regarding the speaker's future intent. *Jacobs*, 792 F.Supp. at 1528.

 Here, all of the alleged misrepresentations made to the individual plaintiffs relate to CSSC and McBride's intent regarding the future development of the 9.5 acre site. The trial court, therefore, did not err in dismissing plaintiffs' negligent misrepresentation claim contained in Count III.

## 3. Did plaintiffs state a claim for intentional misrepresentation?

 Under Missouri's fact pleading requirements, a pleader must state the ultimate facts, or allegations which infer those facts, which support every element of the cause of action pleaded to survive a motion to dismiss. Rule 55.05(1); *Sofka v. Thal*, 662 S.W.2d 502, 508 (Mo. banc 1983). Thus, a court must ignore mere conclusions that the pleader alleges without supporting facts in determining whether the petition states a cause of action. *Id.*

 An element of an intentional misrepresentation claim is that the hearer had the right to rely on the alleged misrepresentations. *Emerick*, 756 S.W.2d at 519. Consequently, the pleader cannot merely conclude that it had the right to rely on the alleged misrepresentation to survive a motion to dismiss. *Tri–County Human Develop-*ment Corp. v. Tri–County Group XV, Inc., 901 S.W.2d 308, 311 (Mo.App.1995). Rather the pleader must include allegations of the ultimate fact, or facts that infer the existence of that fact, which give rise to the right to rely on the alleged misrepresentation to survive a motion to dismiss. *Id.; See also Clark v. Olson*, 726 S.W.2d 718, 721 (Mo. banc 1987).

 Here, plaintiffs merely concluded in their petition that they had the right to rely on defendants' alleged misrepresentation. Plaintiffs have failed to include any facts in their petition that support this conclusion. In fact, taking all of plaintiffs' allegations as true, plaintiffs knew, or should have known, the manner in which CSSC and McBride intended to develop the 9.5 acres because plaintiffs alleged in their petition that the recorded 1978 and 1980 development plans outline those intentions. The fact that plaintiffs knew, or should have known, that the alleged misstatements were in fact incorrect does not support their pleaded conclusion that they reasonably relied on those statements. *See Mark Twain Bank v. Jackson, Brouillette, Pohl & Kirley. P.C.*, 912 S.W.2d 536, 540 (Mo.App.1995).

 We find that even if we construe the petition most favorably to plaintiffs, plaintiffs have failed to adequately plead the necessary facts that support their conclusion that they had the right to rely upon CSSC and McBride's alleged misrepresentations. Therefore, the trial court ruled correctly in dismissing plaintiffs' intentional misrepresentation claims against CSSC and McBride.

### E. Plaintiffs' dedication claims

The trial court dismissed plaintiffs' statutory and common law dedication claims regarding the 9.5 acre site contained in Count IV of plaintiffs' petition. Because the plaintiffs' petition fails to state a cause of action for both common law and statutory dedication, we affirm the trial court's dismissal of Count IV.

 The elements of common law dedication are: (1) the owner, by unequivocal actions, intended to dedicate the land to public use; (2) the public accepted the dedicated

land; and (3) the public is using the dedicated land. *Whittom v. Alexander–Richardson,* 851 S.W.2d 504, 507–08 (Mo. banc 1993). Here, the plaintiffs have not alleged in their petition that the public is currently using the 9.5 acres. Therefore, plaintiffs failed to state a cause of action for common law dedication.

■ Plaintiffs have also failed to state a cause of action for statutory dedication. Only a city, town or village may acquire title to a piece of property by statutory dedication. Section 445.070; *State ex. rel. Missouri Highway Transportation Comm. v. London,* 824 S.W.2d 55, 59–60 (Mo.App.1991). Plaintiffs do not allege in their petition that a city, town or village acquired title to the 9.5 acres through a statutory dedication. Rather, plaintiffs allege that the trustees of the association acquired title to the 9.5 acre site by the alleged dedication. Thus, plaintiffs failed to include a necessary element for statutory dedication in their petition. The trial court did not err, therefore, in dismissing plaintiffs' statutory dedication claim. Because the plaintiffs failed to state a cause of action for both statutory and common law dedication, the trial court did not err in dismissing their Count IV.

*F. Plaintiffs' attorney fees.*

Plaintiffs also appeal from the trial court's denial of their request for their attorney fees as provided for in paragraph 10(c) of the Riverwood Master Indenture. Plaintiffs argue that because the Master Indenture recites that the trustees have the right to collect their attorney fees against any owner in enforcing a covenant, the trial court was required to award them their attorney fees. We disagree.

■ It is true that if a contract provides for the payment of attorney fees and expenses incurred in enforcing rights under the contract, the trial court must award those fees. *Schnucks Carrollton Corp. v. Bridgeton Health & Fitness, Inc.,* 884 S.W.2d 733, 739 (Mo.App.1994). However, even if the contract is silent on the issue, a party may only recover its attorney fees under a contract provision if it is the prevailing party. *Porter v. Lake Waukomis Assn.,* 687 S.W.2d 237, 239–40 (Mo.App.1985). Missouri courts

have defined a prevailing party as the party prevailing on the main issue, even though not necessarily to the extent of its original contention. *Birdsong v. Bydalek,* 953 S.W.2d 103 (Mo.App.1997) (quoting Black's Law Dictionary, p. 1188 (6 th ed.1990)).

■ Here, plaintiffs prevailed only on their claim that CSSC had created a covenant in the 9.5 acre site in favor of the Riverwood landowners. Plaintiffs were unsuccessful on their remaining five claims. Specifically, plaintiffs failed to prevail on their (1) specific performance claim, (2) intentional and negligent misrepresentation claims, (3) common law and statutory dedication claims, (4) breach of fiduciary duty claim and (5) ejectment claim. Furthermore, plaintiffs' primary allegation in their petition was that under the covenant, title to the 9.5 acres vested in the trustees as common ground as soon as the Hazelwood School Board refused the site. However, the trial court held that under the covenant, McBride retained title to the 9.5 acres and that McBride could develop the site residentially. Under these circumstances, we find that the trial court did not err in concluding that the plaintiffs were not entitled to their attorney fees as the prevailing party.

Plaintiffs have also filed a motion for their attorney fees on appeal. For the reasons set out above, we deny the motion for attorney fees incurred on appeal.

*G. Taxing costs against McBride*

In its final order, the trial court taxed the costs against McBride. McBride appeals this order of the trial court, arguing that the trial court abused its discretion in taxing the costs against McBride. We disagree.

■ The trial court has the discretion to award costs if a plaintiff in a multi-count petition prevails on some but not all of its claims. Section 514.090. Accordingly, we will not reverse the judgment of the trial court awarding costs unless it constitutes an abuse of that discretion. *Kopp v. Franks,* 792 S.W.2d 413, 423 (Mo.App.1990).

■ Here, an issue in dispute was whether CSSC created a covenant in favor of the

Riverwood landowners with respect to the 9.5 acres. Although the trial court found that the scope of the covenant was much narrower than plaintiffs alleged, the trial court did find that the 9.5 acre site was subject to a covenant in favor of the Riverwood landowners. Given that fact, we cannot say that the trial court abused its discretion in taxing the costs against McBride.

The judgment of the trial court is affirmed in all respects.

CRANDALL and KAROHL, JJ., concur.